UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Phillip Randal Johnson, | ) | Civil Action No. 5:20-cv-47-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Andrew M. Saul, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act").

Having carefully considered the parties' submissions and the applicable law, the court affirms the

Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

    A.      Procedural History

On February 5, 2016, Plaintiff filed an application for DIB alleging a disability onset date

of January 13, 2016. Tr. 248-49. His claim was denied initially, Tr. 130-33, and upon

reconsideration, Tr. 136-142, and Plaintiff requested a hearing, Tr. 143-44. On May 23, 2018, a

hearing was held before an Administrative Law Judge ("ALJ") and testimony was taken from

Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. 58-93. On

November 20, 2018, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr.

28-52. Plaintiff requested review of the decision from the Appeals Council, Tr. 155-56, and, the

Appeals Council denied review on November 7, 2019, making the ALJ's decision the

Commissioner's final decision for purposes of judicial review, Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed January 6, 2020. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born in July 1960 and was 55 years old on his alleged onset date of January 13, 2016. Tr. 261. In his initial Disability Report-Adult form Plaintiff noted that he earned his GED and did not attend special education classes or have vocational training. Tr. 266. He listed his past relevant work ("PRW") as a truck driver for three different companies from 2002 through 2016. *Id.* Plaintiff indicated the following medical conditions limited his ability to work: chronic lower back pain, asthma, fallen arches, and high blood pressure. Tr. 198. Plaintiff indicated that he was 5'7" tall, weighed 161 pounds, and his conditions caused him pain or other symptoms. *Id.*

C.    Administrative Proceedings

Plaintiff appeared with counsel in Greenville, South Carolina for his administrative hearing on May 23, 2018. Tr. 58-93. Plaintiff and VE William Stewart appeared and testified at the hearing. *Id.*

1.   Plaintiff's Testimony

In response to questions from the ALJ Plaintiff testified he was 57 years old.  Tr. 64.  He testified he went through the twelfth grade of high school but got his GED. *Id.* He testified that three people live in his home—he, his wife, and his 10-year-old grandson.  *Id.* Plaintiff explained that he has custody of his grandson who has been living with the family for two years. *Id.* Plaintiff recalled that his last day of work was January 6, 2016, when he left International Paper. *Id.* Plaintiff testified that he has not worked fulltime or part time since. Tr. 65. Plaintiff explained that he filed

for disability but not for state unemployment benefits. *Id.* He also filed a workers' compensation claim, but Plaintiff testified he did not get feedback from his claim. *Id.*

In response to questions from his attorney, Plaintiff testified that he worked as a truck driver for International Paper. Tr. 66. He testified that prior to working for International Paper he drove trucks for 20 years. *Id.* When asked what medical problems are giving him the most pain, Plaintiff responded his back, his knees that will give out, and whole right leg that gets numb. *Id.* Plaintiff testified that he cannot control his leg when it is numb. *Id.* He agreed that he has severe pain in both knees, and due to the pain in his back, he cannot sit too long and has to keep adjusting his seated position. Tr. 66-67. Further, he explained that certain seated positions will cause his knees to hurt. Tr. 67. To help with the pain, Plaintiff testified he takes Morphine and always wears knee braces. *Id.* He also uses a crutch to help him walk. *Id.* He explained that the military issued him the "forearm crutch" because he could no longer use his walker in his house. Tr. 67-68. Plaintiff explained that he does not have room in his home for the walker, but he fell a few times, so he needs the walking aid to help with support and balance. Tr. 67. Plaintiff recalled using both a walker and a cane prior to using the forearm crutch for support. Tr. 68. Plaintiff also sits on a walker and testified that he uses it whenever he goes into the kitchen which occurs five to six hours in a day. *Id.* Later in his testimony, Plaintiff further explained that he carries the forearm crutch in his right arm, and with his left hand, he carries his portable chair. Tr. 71. Plaintiff testified he would only be able to take a couple steps without the aids he uses to walk. Tr. 72.

Concerning his mental health, Plaintiff testified that he is being treated for depression by the military and takes the following medications: Citalopram, Prazosin,[1] and Trazadone. Tr. 68.

---

[1] Misspelled phonetically in the transcript as "Prazium." *See* Exhibit 12E, Tr. 311, Claimant's Medications.

Plaintiff testified he is seeing a psychiatrist twice a month, an increase from seeing her once a month. Tr. 68-69. Additionally, Plaintiff confirmed he has sleep apnea, and if he sits too long without doing anything, he will fall asleep. Tr. 69. Plaintiff testified he has fallen asleep while holding coffee or eating, causing spills. *Id.* He testified the spilling liquids or foods when falling asleep happens daily. *Id.*

When asked what year he began experiencing pain, Plaintiff testified he has always had back pain—ever since his early 20s, and it only gets worse with time. Tr. 70. He explained that the worsening pain has affected his knees, and his whole livelihood. *Id.* He testified he cannot cut grass or do anything around the house. *Id.* Plaintiff believes the pain is attributed to his getting in and out of trucks, especially when he was working local routes and getting in and out of the truck every 30-40 minutes. *Id.* Further, he recalled having a few slips and falls. *Id.* Plaintiff responded that he does not believe he could safely drive a truck again. Tr. 70-71. He testified that he no longer drives at all. Tr. 71. Specifically, Plaintiff testified he has not tried to get inside of a truck since he stopped working in 2016 nor has he tried to get in and out of a truck. Tr. 71. Further, Plaintiff testified that his VA doctor advised him not to drive a truck because of the medication he was taking. *Id.*

Plaintiff testified he has a rash on his hands that causes irritation on his hands and causes his hands to sweat. Tr. 72. Plaintiff testified he has asthma, and when he experiences shortness of breath, and uses Symbicort and Albuterol inhalers. Tr. 72-73. When asked how the asthma affects his behavior, Plaintiff testified he is "short-winded" and gets "agitated." Tr. 73. He did not testify as to any particular activity that would cause an asthma flare up and stated he can get a flare up even when sitting still. *Id.* He explained that he had to use his inhaler in the parking lot before coming into the administrative hearing. *Id.* Plaintiff agrees he gets relief from his asthma when he

4

takes his medicine.  *Id.* Plaintiff testified that "wheezing episodes" happen eight-to-nine times a day. Tr. 74.

Concerning his back, Plaintiff testified that he has degenerative arthritis.  Tr. 74. Plaintiff explained that the pain is "a great big throb," that sometimes will shoot down his right side such that the whole back of his leg and feet feel like they are on fire.  *Id.* At this point in the hearing, Plaintiff begins to stand rather than sit because he was more comfortable standing. *Id.* He testified that he is able to sit for 30-minute increments. *Id.* He testified that he cannot lift anything or bend over. *Id.*

Upon requestioning by the ALJ, Plaintiff testified that he has been falling asleep and dropping food and coffee for a few years, more than two years, but it is getting worse. Tr. 75. Specifically, he testified that when he drove trucks in Atlanta, people would blow the horn at him in traffic when he fell asleep driving. *Id.* Plaintiff testified that he has never been to the emergency room for his asthma, but he had been hospitalized a few times for it about seven or eight years ago. *Id.*  Plaintiff testified that the wheezing seven or eight times a day has been happening for about four years. Tr. 76. He testified that the VA is treating him for his sleep apnea, and Plaintiff recalled that he underwent a sleep study about a month and a half prior to the hearing.  *Id.*  Plaintiff testified that he has not had surgery on his back, but he had an MRI done about two years ago, and another MRI is scheduled. *Id.* He testified that he has never been hospitalized for more than 24 hours because of his mental illness.  *Id.* He recalled he was initially treated for mental illness in 2005. Tr. 76-77.

When asked to rate his back pain on a ten-point scale, Plaintiff testified his score would be an eight when he is on his medication. Tr. 77. Plaintiff testified he takes his back-pain medication daily. *Id.*  When asked to rate his knee pain on a ten-point scale, Plaintiff testified the score for his

right knee would be a seven when he is on his medication, and the score for his left knee would be an eight or nine. Tr. 77. Plaintiff explained that he experiences pain daily in his knees, but the knee pain is not constant like the back pain. *Id.* He testified that he uses a cream for his hands that he was prescribed in 2004. *Id.* Concerning his knees, Plaintiff testified he has never had surgeries or injections. Tr. 78. He explained that he just uses the knee braces and pain medications he is prescribed. *Id.* He attends physical therapy every two weeks for his knees which he started at the beginning of the year. *Id.* Plaintiff testified that he began having knee problems six or seven years ago. *Id.* He recalled that "it got to the point where [he] had to go to the emergency room because it act[ed] like it wanted to collapse backwards and the pain stayed there for about two weeks. . . ." *Id.*

When asked if he experiences problems with his upper back and neck, Plaintiff testified that when he looks over his shoulder, he has to turn his whole body, and he has to do it slowly. Tr. 79. Concerning his neck, Plaintiff testified that he has a lot of tension going out and down his left side to his shoulder. *Id.* Further, he testified that he experiences severe headaches that cause him to be unable to turn his head such that he cannot look over his shoulder. *Id.* He testified that he has been using the walker for about three months, and he has been using the crutch for about a month. *Id.* Plaintiff testified that in the past two years, he has not left the state; he does not drive (because he fell asleep the last time he drove four to five months prior); he does not attend religious services; he has Facebook but does not use it; he texts but does not email; and does not do research on the internet. Tr. 79-80. Plaintiff testified that he will sometimes go out to eat with his wife and does not do very much with his grandson other than watch TV. Tr. 80.

2. VE's Testimony

The VE testified that Plaintiff's previous work, as classified by the DOT, was a tractor trailer truck driver, DOT number 904.383.010, with a medium exertional level, and SVP of 4, and is semi-skilled. Tr. 82-83. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience with the following limitations:

> [C]an lift 50 pounds occasionally, 25 pounds frequently; can stand six of eight hours; walk six of eight hours; and sit six of eight hours; occasional ropes, ladders, and scaffolds; frequent climbing ramps, stairs, balancing, stooping, kneeling, crouching, and crawling. Avoid concentrated exposure to fumes, odors, dust, gases, unventilated environments, and hazards. Fingering would be frequent; overhead reaching, frequent. This individual could do simple, repetitive tasks, talking about simple one, two-step tasks, and we're talking about unskilled work at the SVP 1 and 2 levels. This can be performed on a sustained basis eight hours a day, five days a week in two-hour increments with normal breaks for an eight-hour workday. This individual would require a low stress work environment. Stress is not a functional term. To put it in functional terms this would be non-production work, specifically no fast-pace work like an assembly line where one has to produce a product in a high speed manner. In addition, to moderate stress, occasional public contact and occasional contact with coworkers and supervisors.

Tr. 84-85. The VE testified such an individual could not perform any of Plaintiff's past relevant work. However, the VE identified the following available unskilled jobs for an individual as described with a medium exertional level: hand packager, DOT 920.587-018, SVP of 2, and nationally 94,000 jobs; machine packager, DOT 920.685-078, SVP of 2, and nationally 78,000 jobs; and stores laborer, DOT 922.687-058, SVP of 2, nationally 165,000 jobs. Tr. 85-86. The VE clarified that the DOT does not address overhead reaching at all, but other than that qualification, there would not be any conflicts. Tr. 86.

In his second hypothetical the ALJ added the additional limitation of the individual having absences from the workstation on a daily basis, the duration of which would be in the sole discretion of the individual, and the VE testified there would be no available work for an individual with such a limitation. Tr. 86-87.

II.     Discussion

A.     The Commissioner's Findings

In his November 20, 2018 decision, the ALJ made the following findings of fact and conclusions of law:

>    1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.
>
>    2.     The claimant has not engaged in substantial gainful activity since January 13, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
>    3.     The claimant has the following severe impairments: asthma; cervical, thoracic, and lumbar degenerative disc disease; dermatitis of the hands; and depression/adjustment disorder/mood disorder (20 CFR 404.1520(c)).
>
>    4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>    5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he could occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs.  He could frequently balance, stoop, kneel, crouch, and crawl.  The claimant could frequently finger and reach overhead. He should avoid concentrated exposure to fumes, odors, dusts, gases, unventilated environments, dusts, and hazards. He can frequently reach, handle, and finger.  The claimant could perform simple, repetitive tasks (*i.e.*, simple 1-2 step tasks at SVP 1 and 2 levels). He could perform such tasks on a sustained basis, eight hours a day, five days a week, in two-hour increments with normal breaks for an eight-hour day.  He requires a low stress environment, meaning non-production work.  Specifically, no fast paced work like an assembly line where one has to produce a product at a high-speed manner. In addition, to accommodate stress, and moderate restriction in interacting with others, he would be limited to occasional contact with the public, coworkers, and supervisors.
>
>    6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born July 25, 1960 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 28-47.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*,

428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.   Analysis

Plaintiff alleges that substantial evidence does not support the finding that he can occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs. Pl.'s Br. 8-14; ECF No. 15. Further, Plaintiff argues that the "central error is that the ALJ substituted his own medical judgment about what the limitations might be, for that of the agency's physicians, who are experts in making that determination." *Id.* at 8.  The Commissioner argues substantial evidence supports he ALJ's finding that Plaintiff was not disabled. Def.'s Br. 7; ECF No. 18.  Further, the Commissioner maintains that the ALJ's physical RFC assessment was well-supported and explained; both state agency medical consultants opined that Plaintiff could engage in climbing consistent with the ALJ's RFC assessment.  *Id.* at 8-12. In Reply, Plaintiff points to medical and other evidence that he maintains support his argument.  Pl.'s Reply; ECF No. 19.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*. *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).  SSR 96–8p provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing

> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7. The court notes, though, that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

Here, the ALJ determined that despite Plaintiff's impairments, he could perform medium work, and he could occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs. Tr. 37. In making the RFC determination, the ALJ noted all Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence. Tr. 37-41. However, the ALJ determined objective evidence supporting Plaintiff's symptoms was lacking or "show[ed] minimal findings that would support [Plaintiff's] alleged functional limitation." Tr. 41. Plaintiff maintains that there is no opinion evidence in the record indicating that he can occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs. Pl.'s Br. 11. Further, Plaintiff references the agency's examining

physician report (Dr. Smith's report) that indicated Plaintiff "ambulated around the exam room slowly, showed considerable difficulty getting out of a seated position, as well as on and off the exam table." *Id.* Additionally, Plaintiff cites to the opinion of Dr. Khan, a treating physician, who he alleges reported that Plaintiff is unable to work "due to his service-connected condition on his back." *Id.* Plaintiff argues that the ALJ erred in giving little to no weight to the Dr. Smith and Dr. Khan opinions.

In his narrative discussion of Plaintiff's RFC, the ALJ recounted Plaintiff's treatment with Dr. Smith who performed an internal medicine consultative examination of Plaintiff on April 25, 2016. Tr. 39. The treatment record from this visit indicates Plaintiff's report of lower back problems dating back to the 1980s secondary to an injury. Tr. 519. Additionally, Plaintiff reported to Dr. Smith that he was told he had scoliosis and degenerative change at L5. *Id.* Plaintiff also reported constant back pain, difficulty walking, and radiating pain to the right lower extremity. *Id.* Plaintiff reported his belief that his back issues are worsening over time and he is taking morphine to help with the pain. Tr. 520. Dr. Smith's notes indicate that Plaintiff ambulates with the use of cane and came into the examination room slowly, but without an abnormal gait. Tr. 521. Further, Dr. Smith noted that Plaintiff demonstrated difficulty getting out of a seated position, as well as off the exam table and on the exam table. *Id.* This note indicates that Plaintiff can ambulate without his assistive device. *Id.* In Dr. Smith's physical exam of Plaintiff's spine, he noted Plaintiff's range of motion of his shoulders was limited in abduction, because Plaintiff stated he could not get them above 90 degrees due to his lower back pain. Tr. 522. Further, this record indicates:

> Examination of the lumbar spine was limited in flexion, 15 to 20 degrees, extension 0 to 5 degrees, and lateral flexion, 5 to 10 degrees bilaterally. He had normal range of motion of the hips, knees, and ankles. He stated he could not do the heel or toe walk. He squatted down about 20% of the way. Seated straight leg was negative. Supine straight leg tests [were] difficult with the patient complained of significant pain at an elevation of about 10 degrees bilaterally in both lower extremities. He

> demonstrated significant difficulty getting into the supine position. He also complained of increased and worsening pain with axial loading. He was wearing a back brace and complained of some spinous process as well as paraspinous areas of tenderness in the lower back. Examination of the feet did reveal a very slight pes planus, but nothing significant.

*Id.* Dr. Smith's impression indicated:

> I am somewhat surprised at the extent of limitation in this individual, given his history of scoliosis, which I did not appreciate on exam as well as degenerative disk disease. He did have positive Waddell's sign including worsening pain with axial loading. Also, pain with elevation of the lower extremities to 10 degrees was somewhat confounding. In any case, there may be some limitation, but it is difficult to state to what extent given the exam findings.

Tr. 523. The ALJ thoroughly recounted Plaintiff's visit with Dr. Smith. After discussing other physical exams and objective tests related to Plaintiff's back impairments, the ALJ again referenced Dr. Smith's finding that Plaintiff did not require an assistive device for ambulation, as he was able to ambulate without the use of an aid, and that there was no atrophy in Plaintiff's lower extremities. Tr. 42. The ALJ also noted that Dr. Smith observed that Plaintiff "maintained normal motor strength in the lower extremities with no abnormal findings in his knees that would otherwise support the use of an assistive device (Exhibits 8F/102; 15F)." *Id.* As the ALJ noted, Dr. Smith was "an examining source" and not a treating physician. Tr. 44. The ALJ observed that Dr. Smith found it "difficult to state what limitations the claimant has due to his physical condition due to exam findings that included 'confounding' pain signs and positive Waddell's sign[3] (Exhibit 5F)." *Id.* Accordingly, the ALJ gave no weight to the opinion "as Dr. Smith declined to provide any functional assessment of the claimant." *Id.*

---

[3] "Waddell's signs are a group of physical signs that may indicate a non-organic or psychological basis for low back pain." *Long v. Astrue,* C.A.No. 6:10–539–SB, 2011 WL 3847081, at *5 n. 1 (D.S.C. Aug. 30, 2011).

According to the applicable regulation, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527 (a)(1). As noted by the ALJ, Dr. Smith was unable to provide any definitive statements on what Plaintiff could do despite his impairments, and he did not provide any physical restrictions. While the ALJ was required to evaluate the opinion, because Dr. Smith was not Plaintiff's treating physician, his opinion was not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(a)(2) and (c)(2). Here, the ALJ provided specific reasons for the weight given to Dr. Smith's opinion. The court is not to weigh evidence or substitute its judgment for that of the Commissioner, but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Here, the ALJ expressed his reasons for the weight assigned to Dr. Smith's opinion and the undersigned finds his reasons are supported by substantial evidence.

Plaintiff also references a May 2016 letter from Dr. Khan wherein the doctor indicates: "In my professional opinion, [Plaintiff] is unable to obtain any employment due to his service connected condition on his back.  He is service connected for the following:  Paralysis of sciatic nerve, flat foot condition, asthma, bronchial, and degenerative arthritis of the spine."  Tr. 525. Dr.

Khan notes that Plaintiff is taking 15mg of a morphine sustained-action tablet every six hours and recommends that he should not be driving while taking the medication. *Id.* He notes that Plaintiff's "current medication will interfere[] with his job and he should not continue to work." *Id.*

The ALJ discussed Dr. Khan's statements, including other similar statements opining that Plaintiff's medications would interfere with his ability to work. Tr. 43. The ALJ acknowledged Dr. Khan's long treating history with Plaintiff through the VA, but the ALJ did not give the opinions controlling weight noting that the issue of disability is one reserved to the Commissioner. *Id.* The ALJ also noted that "these opinions do not provide functional limitations that would support a finding that [Plaintiff] could not perform any work" and only suggest that Plaintiff's pain medication "would interfere with his job without citing to what job is being referenced." Tr. 43-44. The ALJ gave little weight to these "conclusory statements" but gave great weight to limitation for hazards and driving based on Plaintiff's medication. Tr. 44.

Plaintiff objects to the ALJ giving little weight to Dr. Kahn's opinion that he should not continue to work and would be unable to obtain employment. Pl.'s Br. 11. However, the undersigned finds that the ALJ correctly gave little weight to this portion of Dr. Kahn's opinion. An opinion that a claimant is disabled or unable to work constitutes an opinion on an issue reserved to the Commissioner, which is not entitled to any special significance, even if from a treating source. *See* 20 C.F.R. § 404.1527(d)(1), (3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.").

The undersigned finds that substantial evidence supports the ALJ's RFC finding. The ALJ thoroughly recounted the findings in Plaintiff's objective medical evidence. Concerning Plaintiff's reports of back pain, the ALJ found that though Plaintiff testified that his back pain requires him to wear a back brace daily, Plaintiff has not undergone any back surgery. Tr. 37. The ALJ also

noted that Plaintiff rated his back pain as an eight on a ten-point scale and reported that he was prescribed a cane by his physician and issued a walker by the VA. *Id.* Regarding the objective medical evidence in the record, the ALJ referred to a lumbar spine x-ray from February 12, 2015, that showed L5/S1 degenerative disc disease and a lumbar spine MRI from March 26, 2015, that demonstrated degenerative disc changes and S1 spina bifida occulta. Tr. 38. He noted that Plaintiff presented for chronic pain management of his back on January 14, 2016, but his physical exam was unremarkable, and he had a full range of motion in his back and extremities. *Id.* He also exhibited symmetric muscle strength and a steady gait. *Id.*

The ALJ referenced a cervical spine x-ray from January 31, 2017, that demonstrated mild degenerative disc disease at C3-4, and a thoracic spine x-ray that showed right scoliosis. Tr. 40. Notably, the ALJ cited to the report which found "[t]here was no progression in the lumbar spine seen on an x-ray when compared to February 12, 2015 [and] [r]adiological studies of the claimant's sacroiliac joints were within normal limits." *Id.* The ALJ recounted Plaintiff's February 6, 2018 examination of his lumbar spine, that indicated a normal range of motion, but with pain at rest and with movement. Tr. 40-41. Further, the examination indicated no pain, fatigue, weakness, loss of endurance or coordination; 5/5 strength; intact sensation; positive leg raises. Tr. 41. A March 2018 physical therapy consultation indicated Plaintiff "ambulated stooped over with an antalgic gait, and he used a wooden stick for his gait." *Id.* This record also indicated that Plaintiff had "slow, difficult transfers" but he was "encouraged to walk in the community to improve his strength and conditioning." *Id.* The most recent MRI of Plaintiff's lumbar spine, from June of 2018, indicated "transitional anatomy at the lumbosacral junction with sacralized L5 vertebra." *Id.* Further, it was noted that "[t]here were multilevel degenerative changes in the lower thoracic and lumbar spine, slightly improved since the prior study at L4-L5 and otherwise not significantly changed." *Id.* In

considering this objective medical evidence, the ALJ found that it supported degenerative conditions in Plaintiff's cervical, thoracic, and lumbar spine. *Id.* However, the ALJ determined the evidence in the record "shows minimal findings that would support [Plaintiff's] alleged functional limitations." *Id.* The ALJ determined that, "when considering that the claimant's low back treatment has primarily consist[ed] of opiate medication, as well as the most recent MRI noting slight improvement in the degenerative changes in the lumbar spine, [this] suggests that the claimant's allegations of functional limitations due to this condition are not as debilitating as he has stated. The claimant also admitted to yardwork and other mechanical stuff after his alleged onset of disability, which would appear inconsistent with his testimony and Function Report suggesting very limited physical capacity (Exhibit 9F/78)." Tr. 41-42. The ALJ specifically found "based on the positive exam findings" that Plaintiff is "capable of performing medium work except he could occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs." Tr. 42.

As discussed above, the ALJ also considered and weighed the medical opinions of record. Tr. 43-45. Plaintiff has offered no opinion, from any physician, stating that he is unable to occasionally climb ladders, ropes, or scaffolds or frequently climb ramps and stairs. Contrary to Plaintiff's assertion that there is no opinion evidence that states he can do these activities, Pl.'s Br. 11, opinions from two State agency medical consultants specifically found that he could. The ALJ cited to these opinions in his decision and gave them great weight as they appeared "reasonably consistent with the treatment records regarding the claimant's asthma and degenerative disc disease, as well as the consultative examination findings (Exhibits 2F/81-82; 5F; 7F/14; 9F/25, 79; 13F/39, 70; 15F)." Tr. 44. The ALJ further noted:

> As discussed above, the claimant has not exhibited loss in motor strength or significant deficits in range of motion, gait, or neurological findings that would

support greater reductions here. I note both physicians articulated a rationale and summary of the then evidence of record which support the respective opinions. Subsequent to the opinions being rendered additional records were submitted. With the exception of dermatitis treatment records failed to reveal any significant changes that would necessitate modification of the residual functional capacity. By way of illustration, recent examinations revealed that the claimant was encouraged to walk in the community to improve strength and conditioning, lungs were clear, the extremities had no tenderness or swelling, gait was slow but stead the claimant had no muscle spasms in the spine and there was no weakness (Exhibit 13F).

*Id.*

Plaintiff bears the burden of providing evidence establishing the degree to which his impairments limit his RFC. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), *as amended* (May 5, 1993); 20 C.F.R. § 416.945(a)(3). In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion that included a full discussion of the medical and non-medical evidence along with sufficient information to allow meaningful review. Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings. Rather, when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the . . . ALJ[]." *Craig v. Chater*, 76 F.3d at 589 (internal quotation omitted). The undersigned finds that the ALJ did not err in his RFC assessment. Upon review of the ALJ's decision and the administrative record, the court finds that the ALJ's decision is supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the

foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

 IT IS SO ORDERED.


               _Kaymani D. West_

February 24, 2021            Kaymani D. West
Florence, South Carolina         United States Magistrate Judge